Angela Marie THERIAULT, Plaintiff

v.

**UNIVERSITY OF SOUTHERN MAINE, et al, Defendants**

No. Civ.03–38–P–C.

United States District Court,
D. Maine.

Sept. 30, 2004.

Thomas F. Hallett, Law Offices of Thomas F. Hallett, Portland, ME, for Plaintiff.

Melissa A. Hewey, Drummond, Woodsum & MacMahon, Portland, ME, for Defendants.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, Senior District Judge.

The United States Magistrate Judge having filed with the Court on August 31, 2004, with copies to counsel, his Recommended Decision on 42 U.S.C. § 1983 on Defendants' Motion for Summary Judgment filed on February 6, 2004 (Docket Item No. 41); Plaintiff having filed her Objection to the Recommended Decision on September 14, 2004 (Docket Item No. 82);[1] Defendant having filed its Response to Plaintiff's Objection to the Recommended Decision on September 27, 2004 (Docket Item No. 83); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and this Court having made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring in part with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and having determined that no further proceeding is necessary; it is **ORDERED** as follows:

1. The objection of the Plaintiff is **DENIED;**

2. The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED** as to the disposition of Counts V (to the extent that it asserts any claims based upon federal law) and IX of the Complaint and is otherwise **REJECTED;**

3. The Defendant's Motion for Summary Judgment be, and it is hereby, **GRANTED,** in part, and judgment is hereby entered on Count V (to the extent that it asserts any claim based upon federal law) and on Count IX of the Complaint in favor of the Defendants named in each and against the Plaintiff;

4. Counts VI–VIII and X–XIII are hereby **REMANDED** to the State Court from which they were removed for such further procedures thereon as the State Court shall find appropriate;[2]

5. Plaintiff's request for oral argument is hereby **DENIED.**

### SO ORDERED.

### RECOMMENDED DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

DAVID M. COHEN, United States Magistrate Judge.

Defendants the University of Southern Maine and the Trustees of the University

---

1. Plaintiff has objected only to the recommendations relating to disposition of Counts V, IX, and X.

2. With the entry of judgment on Counts V and IX, all the remaining claims in the case (Counts I–IV having previously been dismissed) are based upon state law. No basis of federal jurisdiction over those claims independent of their association with the federal claims pendente lite is reflected in the record. Pursuant to UMW v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) the Court declines to exercise jurisdiction pendente lite over those claims on the basis, inter alia, of considerations of comity and judicial economy. See Snowden v. Millinocket Regional Hospital, 727 F.Supp. 701 (D.Me.1990); McInnis–Misenor v. Maine Medical Center, 319 F.3d 63, at 73–4 (1st Cir.2003); Camelio v. American Federation, 137 F.3d 666, at 672 (1st Cir.1998).

of Maine System move for summary judgment on all claims asserted against them in this action removed from state court and arising out of a student disciplinary proceeding, as does the remaining defendant,[1] Ken Nye. I recommend that the court grant the motions.

## I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

## II. Factual Background

The following undisputed material facts are appropriately presented in the parties' respective statements of material facts submitted pursuant to this court's Local Rule 56.

The University of Southern Maine is an administrative unit of the University of Maine System ("UMS") and has no independent legal status. University Defendants' Statement of Undisputed Material Facts, etc. ("Defendants' SMF") (Docket No. 42) ¶ 1; Plaintiff's Response to University Defendants' Statement of Undisputed Material Facts, etc. ("Plaintiff's Responsive SMF") (Docket No. 65) ¶ 1. Any discipline of a student at UMS is governed by the Student Conduct Code, which prohibits activities by students that are considered to "directly and significantly interfere" with the University's educational mission or with the University's "subsidiaries [sic] responsibilities," including "protecting the health and safety of persons in the campus community." *Id.* ¶¶ 2–3. The Code establishes a Student Conduct Committee which is designated to hear and decide appeals of disciplinary suspensions made by a conduct officer, the person responsible for adjudicating alleged violations of the Code. *Id.* ¶ 5.

The Code provides that "administration and interpretation of the Student Conduct

---

1. Claims asserted against an additional defendant, Charles Rittershaus, were dismissed on

July 23, 2004. Docket No. 79.

Code shall be solely within the jurisdiction of the [Conduct] Officer, [Student Conduct] Committee and the President or his/her designee on each campus, such interpretation being pursuant to the procedures of this Code." *Id.* ¶ 6.[2] The Code provides that the Committee "shall consist of at least three, but no more than seven, members, at least one of whom shall be a student and one a Presidential designee. The number of Committee members, the composition of the Committee, and the method of selection shall be determined by each campus in a manner approved by the President." *Id.* ¶ 8. There is some level of faculty involvement on each of the student conduct committees throughout the UMS, with faculty serving as voting members of the committees in some instances. Defendants' SMF ¶ 9.[3]

Stephen Nelson serves as the assistant to the vice-president for community standards at the University of Southern Maine and as that campus's conduct officer. *Id.* ¶ 10; Plaintiff's Responsive SMF ¶ 10. He is the administrator with primary responsibility for investigating and adjudicating alleged violations of the Code. *Id.* At the University of Southern Maine, the Committee is composed entirely of graduate and undergraduate students, with non-voting faculty advisors. *Id.* ¶ 11. There are presently three faculty advisors to the Committee, but generally only one is present during Committee hearings. *Id.* It has been the general practice at the University of Southern Maine at least since 1999 for the Committee's faculty advisor to participate in the questioning of complainants, respondents and witnesses. Defendants' SMF ¶ 13.[4] It is also the general practice for the Committee's faculty advisor to be present and assist the Committee during its deliberations. *Id.* ¶ 15.[5]

2.  The plaintiff objects to this paragraph of the defendants' statement of material facts "to the extent paragraph 6 is a legal conclusion" and then admits that the quoted language "is provided in the code." Plaintiff's Responsive SMF ¶ 6. Since the paragraph purports to do nothing more than quote language from the Student Conduct Code, the objection is meaningless. I note that the plaintiff includes some of the same language from the same section of the Code in her statement of material facts. Plaintiff's Statement of Disputed Material Facts ("Plaintiff's SMF") (Docket No. 66) ¶ 74.

3.  The plaintiff objects to this paragraph of the defendants' statement of material facts, contending that it is hearsay and without support "on the record." Plaintiff's Responsive SMF ¶ 9. To the contrary, the authority cited by the defendants in support of this paragraph, paragraph 10 of the Affidavit of J. Kelley Wiltbank (Docket No. 54), fully supports the factual statement set forth in the text above. The affidavit is made on Wiltbank's personal knowledge, *id.* at jurat, and demonstrates the basis for that personal knowledge, *id.* ¶¶ 1, 6, 8. The objection is overruled. The plaintiff alternatively denies the paragraph, stating that "members of the Student Conduct Committee must be students and they cannot be faculty members." Plaintiff's Responsive SMF ¶ 9. However, the authority cited in support of that assertion, the deposition of Joelle Smith, demonstrates that Smith stated that only students could be members of the committee at the University of Southern Maine. Deposition of Joelle L. Smith (Docket No. 45) at 18–19. Paragraph 9 of the defendants' statement of material facts refers to practices on other campuses of the University system.

4.  The defendant denies this paragraph of the defendants' statement of material facts, Plaintiff's Responsive SMF ¶ 13, but the factual assertions offered in support of her denial are not responsive to the statement presented in paragraph 13 of the defendants' statement of material facts, which is supported by the citations given to materials in the summary judgment record.

5.  The plaintiff objects to this paragraph of the defendants' statement of material facts as hearsay. Plaintiff's Responsive SMF ¶ 15. The affidavit cited by the defendants in support of this paragraph makes clear that the

The Code provides for the participation of "advisors," who are defined as individuals who advise or support "any party involved in the process." *Id.* ¶ 17; Plaintiff's Responsive SMF ¶ 17. The Code provides that members of the Committee may question witnesses or parties to the proceeding at any time during the hearing and that witnesses or parties may ask questions of other witnesses or parties only at the discretion of and through the chair. *Id.* ¶ 18.

During the 2001–02 academic year, the plaintiff was a first-year student at the University of Southern Maine. *Id.* ¶ 19. On the night of April 13, 2002 the plaintiff attended a party at an off-campus fraternity in Gorham, Maine. *Id.* ¶ 20.[6] On Sunday, April 14, 2002, the plaintiff's resident advisor, Lynn Clements, was told that the plaintiff had been sexually assaulted the prior night by an unknown male student at the party. *Id.* ¶ 21.[7] Clements accompanied the plaintiff to the University of Southern Maine police. *Id.* ¶ 22. On April 14 or 15, 2002 Nelson learned that the plaintiff had filed a report that she had been raped at a fraternity house the prior weekend. *Id.* ¶ 24. On April 15, Nelson contacted the plaintiff by letter and offered his assistance with respect to potential discipline under the Code of the student responsible for the alleged assault. *Id.*

After meeting with the plaintiff, Nelson began an investigation of her allegations. *Id.* ¶ 25.[8] Nelson immediately suspended the alleged assailant from the University of Southern Maine and gave him three hours from receipt of the suspension notice to leave the campus. *Id.* On April 25, 2002 Nelson sent the alleged assailant a letter informing him that he was not to have any contact with the plaintiff and that he could not be present on any University of Southern Maine property. *Id.* ¶ 26. On May 9, 2002 Nelson concluded his investigation and issued a decision finding the alleged assailant "responsible" for sexual assault and "conduct threatening or endangering the health or safety of any individual," both stemming from the alleged sexual assault of the plaintiff on April 14, 2002. *Id.* ¶ 27. The University of Southern Maine imposed the following sanctions on the alleged assailant: dismissal from the University of Southern Maine and permanent separation from all units in UMS, subject to a review after five years; and a criminal trespass notice barring him from University of Southern Maine property for five years. *Id.* ¶ 28. The alleged assailant filed a timely appeal from this decision on May 15, 2002. *Id.* ¶ 29. An appeal hearing before the Committee was scheduled for July 12, 2002. *Id.*

On June 13, 2002 Nelson sent the plaintiff a letter outlining her options in terms

statement is based on personal knowledge; it is not hearsay. Affidavit of Stephen M. Nelson (Docket No. 55) ¶¶ 1–3, 7, jurat. The objection is overruled. The plaintiff also purports to deny the paragraph, but the factual assertions offered in support of the denial are not responsive to the statement presented by the defendants.

6. The plaintiff objects to this paragraph but also admits it. Plaintiff's Responsive SMF ¶ 20.

7. The plaintiff objects to this paragraph of the defendants' statement of material facts as

"not supported by the citation," Plaintiff's Responsive SMF ¶ 21, but review of the authority cited by the defendants reveals that it does support the paragraph, as modified in the text above, Continued Deposition of Angela Theriault (Docket No. 47) at 22–23. The objection is overruled.

8. The plaintiff objects to this paragraph of the defendants' statement of material facts "to the extent that paragraph 25 is a legal conclusion," but also admits it. Plaintiff's Responsive SMF ¶ 25.

of participating in the Committee hearing. *Id.* ¶ 30. On June 17, 2002 Nelson sent the plaintiff a letter with additional information about the hearing, including the names of the Committee members and their faculty advisor, a list of invited witnesses, a copy of the Code, a copy of the procedures to be used at the hearing, and a copy of her police statement. *Id.* ¶ 31. In that letter, Nelson offered to contact any additional witnesses that the plaintiff wanted to appear at the hearing and to meet with her to review the case and her testimony in preparation for the hearing. *Id.* ¶ 32. The plaintiff met with Nelson a handful of times. *Id.* ¶ 33. As the process continued, Nelson kept the plaintiff informed. *Id.* ¶ 34.

At the hearing on July 12, 2002 the plaintiff was represented by counsel. *Id.* ¶ 36. A partition was placed between the plaintiff and her alleged assailant, at her request *Id.* ¶ 37. The plaintiff was permitted to have a rape crisis counselor present throughout the hearing to provide support. *Id.* ¶ 38.

The chair of the Committee during the hearing was a female second-year law student. *Id.* ¶ 39. She had participated in approximately 52 hearings prior to the one held on July 12, 2002. *Id.* ¶ 40. The four other students on the Committee were also female. *Id.* ¶ 42. Defendant Nye, the program coordinator for the Educational Leadership Program and clinical lecturer in Educational Leadership in the Professional Education Department, served as the non-voting faculty advisor to the Committee for the hearing. *Id.* ¶ 43. Nye had served in that role for approximately nine years and had attended approximately 55 prior Committee hearings. *Id.* ¶ 44.

At the outset of the hearing, Nelson provided the Committee with an explanation of his investigation and the basis for reaching the conclusion that the alleged assailant was responsible for the charges asserted against him. *Id.* ¶ 45. The Committee then heard testimony from, and asked questions of, twelve witnesses, including the plaintiff and the alleged assailant. *Id.* ¶ 46. After the plaintiff testified, Committee members and Nye asked her follow-up questions. *Id.* ¶ 47. The same procedure was followed after the alleged assailant testified. *Id.* At the conclusion of the testimony of all witnesses, Nelson provided a recommendation to the Committee regarding charges and sanctions. *Id.* ¶ 51. The plaintiff's attorney made a closing argument. *Id.* The alleged assailant's father also made a closing argument. *Id.*

The Committee members then went into a closed session with Nye for deliberations. *Id.* ¶ 52. When the Committee returned, the chair reported that the Committee found the alleged assailant not responsible for the charges, imposed no sanctions, and recommended that the alleged assailant have no contact with the plaintiff. *Id.* ¶ 53. The plaintiff was shocked by this decision. *Id.* ¶ 57.

The plaintiff's father was a student at Rumford High School during the time that Nye served as the school's principal. *Id.* ¶ 61. He characterizes his relationship with Nye at that time as "stormy." *Id.* ¶ 62. They had no contact between the father's graduation in 1979 and the hearing on July 12, 2002. *Id.* Nye recalls his relationship with the father during his high-school years as "good." *Id.* ¶ 63. The father objected to Nye's assignment as faculty advisor to the Committee hearing that resulted from his daughter's complaint when he was informed of that assignment before the hearing was held. Plaintiff's SMF ¶ 43; Defendants' Reply Statement of Facts ("Defendants' Responsive SMF") (Docket No. 74) ¶ 43. He was told that his daughter could not object to Nye's assignment to the hearing. *Id.*

Committee members do not recall what, if anything, Nye said during their deliberations. Defendants' SMF ¶ 64; Plaintiff's Responsive SMF ¶ 64. Nye recalls that he said during deliberations that he found the alleged assailant's story to be more credible than the plaintiff's. *Id.* ¶ 65.

On September 12, 2002 Nelson learned that the alleged assailant and the plaintiff had registered for the same criminology class. *Id.* ¶ 71. A vice-president of the University of Southern Maine contacted the alleged assailant regarding his enrollment in that class and, as a result, the alleged assailant transferred to another class. *Id.* ¶ 72.

### III. Discussion

The complaint alleges that the defendants deprived the plaintiff of due process of law and equal protection under the Maine and federal constitutions, defamed her, conspired to deprive her of her constitutional rights, negligently harmed her and breached a duty of good faith and fair dealing. Complaint and Jury Claim ("Complaint") (included in Docket No. 2) Counts V–VII, XI–XII. It also alleges that the University of Southern Maine and the Trustees violated 20 U.S.C. § 1681, breached a contract with her, and negligently supervised Nye, *id.* Counts VIII, X & XIII, and asserts a separate constitutional claim against Nye under 41 U.S.C. §§ 1983 and 1988, *id.* Count IX.

### A. Common Counts

*1. Due Process and Equal Protection.* Counts V and VI [9] of the complaint do not mention 42 U.S.C. § 1983, but that is the only vehicle through which the plaintiff may press her federal constitutional claims. *Hearth, Inc. v. Department of Pub. Welfare,* 617 F.2d 381, 382–83 (5th Cir.1980). The plaintiff does not disagree with the defendants' statement that the plaintiff's claims under the Maine constitution that are raised in these counts are to be analyzed in the same manner as the federal claims. Motion for Summary Judgment of Defendants University of Southern Maine and Trustees of University of Maine System, etc. ("UMS Motion") (Docket No. 40) at 9 n. 10. The defendants' view is supported by *Fowles v. Stearns,* 886 F.Supp. 894, 899 n. 6 (D.Me.1995), and, like the parties, I will not discuss the state constitutional claims separately. The plaintiff contends that her due process rights were violated by denial of the right of cross-examination at the hearing, Nye's alleged bias, the refusal to recuse Nye, lack of training of Nye, use of written statements rather than direct testimony at the hearing and lack of a right to appeal the Committee's decision. UMS Opposition at 13, 14.

██ No process is due, of course, unless there is an underlying interest that is protected by the Fourteenth Amendment. *Johnson v. Rodriguez,* 943 F.2d 104, 109 (1st Cir.1991); *Tigrett v. Rector & Visitors of Univ. of Va.,* 137 F.Supp.2d 670, 675 (W.D.Va.2001). Here, the plaintiff relies on her asserted property right in a public education and liberty interest in her reputation. UMS Opposition at 12. The plaintiff fails to surmount the initial hurdle with respect to either of these asserted rights.

██ The plaintiff's asserted right to a public education was not at risk in the hearing process. The case law on which

9. The plaintiff "acknowledges that the Equal Protection Violation claim does not survive against the School Defendant, and is addressed in the Section 1983 claim against individual Defendant Nye." Plaintiff's Opposition to Defendant University of Southern Maine's Motion for Summary Judgment ("UMS Opposition") (Docket No. 67) at 23. I take this statement as an admission that all three defendants are entitled to summary judgment on Count VI, and I agree. I will not consider Count VI further.

she relies provides that a student whose future attendance at the educational institution is at issue is entitled to due process protection. *Goss v. Lopez,* 419 U.S. 565, 567, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (students suspended from high school); *Gorman v. University of R. I.,* 837 F.2d 7, 9 (1st Cir.1988) (student suspended after college disciplinary hearing); *Johnson v. Collins,* 233 F.Supp.2d 241, 243, 247 (D.N.H.2002) (student expelled from junior-senior high school); *Tigrett,* 137 F.Supp.2d at 673–74 (plaintiff was college student facing expulsion after hearing); *Goodman v. President & Trustees of Bowdoin College,* 135 F.Supp.2d 40, 43 (D.Me. 2001) (disciplinary action taken against college student); *Carey v. MSAD # 17,* 754 F.Supp. 906, 913–14 (D.Me.1990) (suspended student facing expulsion from junior high school). *See also Gomes v. Univ. of Me. Sys.,* 304 F.Supp.2d 117, 128 (D.Me. 2004) ("The Plaintiff's are entitled to the protections of due process, since they were facing expulsion or suspension from a public educational institution and their interest in pursuing an education is included within the Fourteenth Amendment's protection of liberty and property."). Here, the plaintiff cites no case law in which the party seeking to invoke due process rights was the student complaining of the conduct that might give rise to the suspension or expulsion of another student, and my research has located none. The plaintiff had no property right at issue in the disciplinary

process initiated by her complaint against her alleged assailant; accordingly, she is not entitled to due process protection on this basis.[10] *See Johnson,* 943 F.2d at 106, 110 (plaintiff sued state agency that found no probable cause to sustain his complaint against university that failed to hire him, alleging deprivation of due process; dismissal of suit upheld, with court noting that "Insofar as appellant's arguments are veiled attempts to obtain judicial review of appellee's negative determination, it is clear that we have no power to provide redress.").

The liberty interest in her reputation that is invoked by the plaintiff is subject to due process protection only when accompanied by injury to another constitutionally-protected interest. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). "Under *Paul,* an allegation that government ... defamation has caused damage to reputation, even with all attendant emotional anguish and social stigma, does not itself state a cause of action for violation of a constitutional right; infringement of more tangible interests must be alleged as well." *Borucki v. Ryan,* 827 F.2d 836, 842–43 (1st Cir.1987) (citation and internal punctuation omitted). "[T]he Fourteenth Amendment procedurally protects reputation only where (1) government action threatens it, (2) with unusually serious harm, (3) as evidenced by the fact that employment (or some other right or status) is affected." *Beitzell v.*

10. Contrary to the plaintiff's argument, unsupported by citation to authority, UMS Opposition at 13, the fact that the University of Southern Maine provided her with what she characterizes as "procedural rights" with respect to the hearing does not and cannot mean that she thereby became entitled to the full panoply of due process rights under the Constitution. The plaintiff also contends that she was entitled to due process protection in connection with the Committee hearing because "it is almost a foregone conclusion that

an adverse decision to an alleged victim will have significant impact on a victim's property and liberty interests." *Id.* That is not a "foregone conclusion" at all, but, even if it were, the argument is based on a basic misunderstanding of constitutional law. It is the potential for injury to those interests at the outset of the proceeding at issue that governs the availability of due process protection, not the subjective effects suffered after the proceeding by the alleged victim.

*Jeffrey,* 643 F.2d 870, 878 (1st Cir.1981). Assuming *arguendo* that Nye's use of the term "love-making" to characterize the activity of which the plaintiff complained when questioning the alleged assailant—the only instance of alleged defamation cited by the plaintiff, UMS Opposition at 22–23—can be considered defamatory to the plaintiff under Maine law [11] and that the use of the term threatened the plaintiff with unusually serious harm, the plaintiff cannot meet the third element of this test. The plaintiff offers only her asserted "loss of educational opportunity" as that injury. UMS Opposition at 23.

As already discussed, the plaintiff's property interest in a public education was not at issue in the Committee hearing and any alleged loss of educational opportunity [12] was due to her subjective response to the outcome of the hearing, the "attendant emotional anguish" to which the *Borucki* court referred, 827 F.2d at 842; it was not imposed by any of the defendants, nor could it have been. The statement itself was not "accompanied by an alteration in legal status or extinction of some legally protected right," *Hunter v. SEC,* 879 F.Supp. 494, 497 (E.D.Pa.1995) (allegation that questions addressed to witnesses during administrative investigation defamed him, resulting in lost economic opportunities; court held that no liberty interest

thereby infringed), nor could it have been. No underlying liberty interest of the plaintiff was at stake in the Committee proceedings; accordingly, the plaintiff is not entitled to press a due process claim.

*2. Conspiracy.* Count VII alleges that the defendants engaged in a conspiracy in violation of 42 U.S.C. § 1985 to "deprive[ ] the Plaintiff of her due process and equal protection rights." Complaint ¶¶ 53–55. The elements of this claim are

(1) a conspiracy, (2) a conspiratorial purpose to deprive a person . . . directly, or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

*Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). The plaintiff offers no evidence of an injury to her person or property; she alleges only deprivation of two constitutionally protected rights. The plaintiff's remarkably brief response to the defendants' argument on this issue asserts only that the Committee chair permitted Nye "to violate due process" and that the chair and Nye stated that the Committee vote was 5–0 "when in fact it was 3–2." UMS

---

**11.** *See, e.g., Echtenkamp v. Loudon County Pub. Sch.,* 263 F.Supp.2d 1043, 1056–57 (E.D.Va.2003) (fact that allegedly defamatory statements were made only in internal memoranda, private conversations and meeting not open to public means they could not form basis of claim of defamation because statements were not published, so did not provide basis for claim for denial of liberty interest without due process).

**12.** The evidentiary support for this argument offered by the plaintiff consists of disputed assertions that she dropped out of a class when she understood that the alleged assailant would be attending the same class, Plaintiff's SMF ¶ 56; she is unable to attend many

fraternity functions because she may run into the alleged assailant, *id.* ¶ 58; she has seen the alleged assailant in the gym on campus, *id.* ¶ 59; she misses classes, *id.* ¶ 63; she "deteriorated in her functioning at school," *id.* ¶ 66; and she has changed her career goal, *id.* ¶ 70. While this may be evidence of a decreased quality of educational experience, it is not evidence of a denial or loss of educational opportunity. *See, e.g., McGregor v. Greer,* 748 F.Supp. 881, 885 (D.D.C.1990) (effect on interest beyond reputation "must extend beyond disadvantage or impediment and reach" the level of foreclosing the plaintiff's freedom" to take advantage of the interest).

Opposition at 24. Because I have determined that the plaintiff is not entitled to pursue a due process violation claim arising out of the hearing, and she has not asserted that she was deprived of any other constitutionally protected right, the defendants are entitled to summary judgment on this count.

*3. Negligence.* Count XI alleges that the defendants violated a duty to the plaintiff to use reasonable care to ensure that the Committee proceedings "would be conducted in an appropriate fashion." Complaint ¶¶ 77–79. The defendants first argue that they are entitled to summary judgment on this count, and on all tort claims asserted in the complaint, because the plaintiff failed to comply with the notice requirements of the Maine Tort Claims Act, specifically 14 M.R.S.A. § 8107. UMS Motion at 31–32. The plaintiff responds that "notice of tort claim was indeed provided" and that the notice substantially complied with the statutory requirement. UMS Opposition at 33–34.

The plaintiff does not contest that the Maine Tort Claims Act applies to her tort claims against the defendants. The Act includes the following notice requirement:

**1. Notice requirements for filing.** Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180–day limit, a claimant or a claimant's personal representative or attorney shall file a written notice containing:

**A.** The name and address of the claimant, and the name and address of the claimant's attorney or other representative, if any;

**B.** A concise statement of the basis of the claim, including the date, time, place and circumstances of the act, omission or occurrence complained of;

**C.** The name and address of any governmental employee involved, if known;

**D.** A concise statement of the nature and extent of the injury claimed to have been suffered; and

**E.** A statement of the amount of monetary damages claimed.

\*     \*     \*     \*     \*     \*

**3. Notices.**

**A.** If the claim is against the State or an employee thereof, copies of the notice shall be addressed to and filed with the state department, board, agency, commission or authority whose act or omission is said to have caused the injury and the Attorney General.

\*     \*     \*     \*     \*     \*

**4. Substantial notice compliance required.** No claim or action shall be commended against a governmental entity or employee . . . unless the foregoing notice provisions are substantially complied with. A claim filed under this section shall not be held invalid or insufficient by reason of an inaccuracy in stating. the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact prejudiced thereby.

14 M.R.S.A. § 8107. The University of Maine System is considered an agency of the state for purposes of this section. *See Tobin v. University of Me. Sys.,* 59 F.Supp.2d 87, 93–94 (D.Me.1999). Failure to comply with this section bars suit. *Porter v. Philbrick–Gates,* 745 A.2d 996, 998 (Me.2000). The plaintiff does not attempt to invoke the "good cause" exception provided by the statute. She points to a letter dated July 17, 2002 from her attor-

ney to Craig Hutchinson,[13] asserting that it meets the notice requirements of the statute. UMS Opposition at 33.

The letter, on the letterhead of the plaintiff's attorney, states that the attorney represents the plaintiff, that the letter "is written as an appeal filed on behalf of" the plaintiff and that the letter is a "Notice of Appeal." Letter dated July 17, 2002 from Thomas F. Hallett to Craig Hutchinson ("Letter") (Exh. A to UMS Opposition)[14] at [1]—[2]. It does not state the plaintiff's address. It asserts that due process violations occurred in the Committee hearing and identifies Nye and the Committee chair as the employees involved. It does not give their addresses. It does give the date and circumstances of the occurrence complained of. It does not state the amount of monetary damages claimed, nor does it state that any monetary damages are claimed. The letter refers repeatedly to "a violation of due process." *Id.* As relief, the letter demands "that a new committee, with a new advisor, be impaneled to re-hear this matter" and that "we can set a briefing schedule for these appeal issues." *Id.* at [2]. There is no indication that the letter was served on the attorney general.

The letter cannot reasonably be read to convey either a "concise statement of the basis of" a tort claim or a "concise statement of the nature and extent of the injury claimed to have been suffered." 14 M.R.S.A. § 8107(1)(B) & (D). It does refer to the plaintiff's "dramatic distress" and "the prospect of future potential harassment, as well as social difficulties arising out of the 'Not Responsible' finding." Letter at [2]. However, those references cannot reasonably be construed to put the defendants on notice that a tort claim is being asserted against them. In a case in which the tort was identified in the alleged notice, which "contained no hint of the property damage or emotional distress" that the plaintiff alleged he had suffered and which "failed to mention any monetary damages sought" by the plaintiff, the Maine Law Court held that the alleged notice was insufficient for purposes of the Maine Tort Claims Act. *Pepperman v. Barrett,* 661 A.2d 1124, 1126 (Me.1995). The alleged notice in this case provides even less information. As was the case in *Pepperman,* the inadequate notice is not saved by the "substantial compliance" provision set forth in 14 M.R.S.A. § 8107(4). That provision may be invoked "only when the errors in the notice amount to mere inaccuracies." *Id.* at 1127. The failure of compliance in this case, as it was in *Pepperman,* is substantial. *See also Kelly v. University of Me.,* 623 A.2d 169, 172 (Me. 1993) (plaintiff did not substantially comply when notice not served on attorney general and included only routine police report and letter of representation).

---

**13.** Hutchinson, who is not identified in the letter as related in any way to the University of Southern Maine, served as vice-president of that institution. Defendants' SMF ¶ 72; Plaintiff's Responsive SMF ¶ 72.

**14.** The letter is introduced into the summary judgment record only by reference to it in the plaintiff's memorandum of law, UMS Opposition at 33, and its citation as authority for one paragraph of the plaintiff's statement of material facts, Plaintiff's SMF ¶ 82. The defendants take the position that "there is no record citation to support the admissibility of"

the letter "and therefore it cannot be considered on summary judgment." Defendants' Responsive SMF ¶ 82. Ordinarily, unauthenticated documents cannot be considered in connection with a motion for summary judgment. *Currier v. United Tech. Corp.,* 2003 WL 1114688 at *3 n. 2 (D.Me. Mar. 11, 2003). It is not necessary to decide whether the letter may appropriately be considered part of the summary judgment record in this instance because, as set forth in the text, even if it is considered, it does not meet the statutory notice requirements.

The defendants are entitled to summary judgment on Count XI.[15]

*4. Good Faith and Fair Dealing.* Count XII alleges that the defendants breached a duty established by the Code to act with good faith and fair dealing in disciplinary proceedings. Complaint ¶¶ 80–82. The defendants contend that no such duty exists under Maine law outside the context of sales of goods. UMS Motion at 30 n. 30. The plaintiff does not respond to this argument. This claim sounds in contract. *Tobin,* 59 F.Supp.2d at 95. Assuming *arguendo* that a contract existed between the parties, Maine does not recognize the implied covenant of good faith in contracts other than those governed by the Uniform Commercial Code. *GMAC Commercial Mortgage Corp. v. Gleichman,* 84 F.Supp.2d 127, 137 n. 6 (D.Me.1999). A contract between a student and a college or university would not be governed by the UCC. The defendants are entitled to summary judgment on Count XII.

## B. Claims Against the University Defendants

*1. Title IX.* The plaintiff alleges that the University of Southern Maine and the Trustees violated 20 U.S.C. § 1681 (known as Title IX) by discriminating against her on the basis of her gender and failing to respond adequately to sexual harassment against her. Complaint ¶¶ 56–68 (Count VIII). That statute provides, in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity

receiving Federal financial assistance. . . .

20 U.S.C. § 1681(a). Damages in a private action under this statute are available only when "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). In addition, "the response must amount to deliberate indifference to discrimination." *Id.* When the plaintiff is the complaining witness in a college disciplinary proceeding rather than the student charged, "the connection between her alleged injuries and the actions of [the college] are [sic] more tenuous and require factual allegations that bridge the 'fatal gap,' [which is the lack of particularized evidence of a causal connection between the allegedly flawed outcome of the disciplinary proceeding and gender bias]." *Brzonkala v. Virginia Polytechnic & State Univ.,* 935 F.Supp. 772, 776–77 (W.D.Va. 1996).

The plaintiff first contends that the UMS did not respond adequately in response to her report of the alleged sexual assault because it refused to remove Nye as faculty advisor to the Committee and "misrepresented" his role with the Committee as "procedural" or "inactive." UMS Opposition at 24–25. However, the suspension of the alleged assailant and the disciplinary hearing were appropriate responses to her report. She has offered no evidence that she has been assaulted or harassed by the alleged assailant since the hearing;[16] there has been no attempt to

---

**15.** If Count V of the complaint may reasonably be read to allege defamation as a state-law tort, the defendants are entitled to summary judgment on that claim as well for the same reason.

**16.** *See Wills v. Brown Univ.,* 184 F.3d 20, 26 (1st Cir.1999) ("[E]vidence of an inadequate

show that the response of UMS did not "remedy the situation" of which she complained. *See Hayut v. State Univ. of N. Y.,* 217 F.Supp.2d 280, 289 (N.D.N.Y.2002); *Hayut v. State Univ. of N. Y.,* 352 F.3d 733, 751–52 (2d Cir.2003). With respect to Nye's role as faculty advisor to the Committee, the summary judgment record demonstrates that the plaintiff's father objected to his presence only on the basis of a perceived bias by Nye against the plaintiff's father. Plaintiff's SMF ¶¶ 43–44. The denial of his request that Nye be removed from the role of faculty advisor to the Committee therefore cannot possibly have been connected in any way to the plaintiff's gender, nor can it serve as evidence of an inadequate response to her complaint of sexual assault. The same is true of the alleged misrepresentations about Nye's expected role in the hearing.

The plaintiff next contends that Nye's "stated determination that the sex was consensual, prior to hearing any of the non-party witnesses" constituted sexual discrimination against her. UMS Opposition at 25. Assuming *arguendo* that Nye's one use of the term "love-making" to refer to the incident at issue in the hearing while questioning the alleged assailant, Plaintiff's SMF ¶ 46, UMS Opposition at 25–26, is evidence of discrimination or bias against the plaintiff—a dubious proposition at best—was an incident of gender-based discrimination, the plaintiff apparently assumes that someone with authority to take corrective measures was present at the hearing and failed to respond, because she suggests that the Committee "could and should have terminated the . . . hearing immediately upon Nye's statements." UMS Opposition at 26. The plaintiff contends that the student members and chair

of the Committee had the sufficient authority under *Gebser* because they were "both decision and policy makers under the Student Conduct Code." *Id.* 118 S.Ct. at 2006 n. 17. She does not cite any entry in her statement of material facts in support of this assertion. The only reference in that document that might be read to be supportive of this assertion states that the "Code itself determines who the policy-makers are with respect to the Student Conduct Code." Plaintiff's SMF ¶ 74. The language from the Code quoted in that paragraph merely provides that interpretation and administration of the Code is solely with the jurisdiction of the Committee. *Id.* That language does not establish the members of the Committee as individuals within the UMS hierarchy holding sufficient authority to redress Nye's alleged discrimination against the plaintiff, such "that [their] acts constitute an official decision by the school . . . itself not to remedy the misconduct." *Floyd v. Waiters,* 171 F.3d 1264, 1264 (11th Cir.1999). In any event, failing to terminate the hearing immediately has not been shown to be "clearly unreasonable in light of the known circumstances," *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and accordingly cannot constitute deliberate indifference.

The plaintiff also contends that she provided notice of Nye's alleged sexual discrimination in her lawyer's post-hearing letter to Hutchinson, who demonstrated the necessary deliberate indifference by responding "that Plaintiff had no rights, and was entitled to nothing from the school." UMS Opposition at 26. This statement seriously mischaracterizes the contents of the response to the letter,

---

response is pertinent to show fault and causation where the plaintiff is claiming that she was harassed or continued to be harassed

*after* the inadequate response." Emphasis in original.)

which itself requested an appeal or a new hearing as the appropriate remedy and did not seek any action against Nye, Letter at [2]. A UMS lawyer responded that "[t]here are no provisions contained within the ... Code allowing a complainant to appeal the findings of the Committee" and that the plaintiff "as an accuser, has no identifiable protected interest in the proceedings (e.g., a liberty or property interest), which would have invoked these constitutional due process protections." Letter dated July 29, 2202 from Todd M. Cabelka to Thomas F. Hallett, Esq. (Exh. B to UMS Opposition).[17] A new hearing would not have been a "corrective measure" for Nye's alleged discrimination; it would not have affected Nye at all. In addition, there is no evidence in the summary judgment record that the plaintiff had any contact with Nye whatsoever after the hearing, let alone that he continued to discriminate against or harass her. *See Noble v. Branch Intermediate Sch. Dist.,* 2002 U.S.Dist.LEXIS 19600 (W.D.Mich. Oct. 9, 2002), at *64 (Title IX "requires only that the school district not display deliberate indifference, such that future acts of harassment are allowed to continue.").

The plaintiff also asserts that the Committee "permitted respondent's father to accuse [the plaintiff] of being promiscuous." UMS Opposition at 26–27. It is not at all clear how or why this alleged omission fits into the *Gebser* analysis. The plaintiff asserts that "[t]his issue should have been previously addressed by [the Chair], as the [plaintiff and her father] were assured it had been." *Id.* at 27. Even if this event were somehow relevant to the Title IX claim, the plaintiff herself included in her statement of material facts the assertion that the Chair told her father that she had warned the alleged assailant and his representatives against trying to introduce the issue of prior sexual conduct Plaintiff's SMF ¶ 72; Defendants' Responsive SMF ¶ 72. The plaintiff does not suggest what the Chair could have done to insure in advance that the alleged assailant's father would not ignore her directions. The warning alone is sufficient evidence to prohibit any rational inference of deliberate indifference in connection with this argument.

The plaintiff does contend that one incident provides specific evidence of deliberate indifference: "the school scheduled both [the plaintiff] and [the alleged assailant] for the same class" at some time after the hearing. UMS Opposition at 27. The plaintiff does not offer any evidence to support her assertion that the school scheduled both students for this class, rather than each student merely selecting the same class without knowledge that the other was doing so as well.[18] The undis-

17. Technically, this issue is not appropriately before the court at all. The plaintiff introduced this document into the summary judgment record without proper authentication and the defendants objected. Plaintiff's SMF ¶ 88; Defendants' Responsive SMF ¶ 88. The objection is granted. As is apparent from the discussion in the text, if the letter were properly a part of the summary judgment record, it would not entitle the plaintiff to relief on the asserted basis.

18. The plaintiff asserts that deliberate indifference on the part of the defendants is evidenced by "permitting [the alleged assailant] to remain as a student on campus." UMS Opposition at 27. Title IX does not require a school to undertake unreasonable remedies. "[I]t would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." *Davis,* 526 U.S. at 649, 119 S.Ct. 1661. Banning the alleged assailant from campus before providing him with an opportunity to be heard or after he had been found "not responsible" by the hearing body would obviously expose the UMS to constitutional or statutory claims by that individual.

puted evidence is that when University of Southern Maine officials learned that both students had registered for the same class, they contacted the alleged assailant, who transferred to another class. Defendants' SMF ¶¶ 71–72; Plaintiff's Responsive SMF ¶¶ 71–72. Without more, such as evidence concerning the amount of time and effort that would have been required for the University of Southern Maine to assure in advance that two individual students would not be allowed to register for the same class, this incident cannot rise to the level of deliberate indifference for purposes of a Title IX claim.

The UMS defendants are entitled to summary judgment on Count VIII.

*2. Breach of contract.* In Count X, the plaintiff alleges that the Code established a contract between the plaintiff and the UMS defendants and that these defendants breached that contract in their conduct of the hearing. Complaint ¶¶ 73–76. The defendants contend that no contract existed and, in the alternative, that none of the terms of the Code were breached and that the plaintiff was not harmed by any such breach. UMS Motion at 29–30.

A contract exists between a university and its students. *Gomes,* 304 F.Supp.2d at 130. The terms of the contract may include statements in the Code, *see id.,* or in manuals. *Mangla v. Brown Univ.,* 135 F.3d 80, 83 (1st Cir.1998).

> The proper standard for interpreting the contractual terms is that of reasonable expectation—what meaning the party making the manifestation, the universi-

ty, should reasonably expect the other party to give it.

*Id.* (citation and internal punctuation omitted). It is not entirely clear from the plaintiff's memorandum of law, but she apparently claims that the Code was breached when the defendants appointed a faculty advisor, refused to allow her to exclude Nye and allowed the faculty advisor to question witnesses. UMS Opposition at 31–32.[19] However, the provisions of the Code which the plaintiff cites, *id.* at 30–31, cannot reasonably be read to prohibit the involvement of a faculty advisor, to accord the parties the right to challenge the appointment of a faculty advisor, or to prohibit the faculty advisor from questioning witnesses. Because there is no evidence of breach, the UMS defendants are entitled to summary judgment on Count X.[20]

*3. Negligent Supervision.* In Count XIII the plaintiff alleges that the UMS defendants negligently supervised the Committee, Nye and the hearing. Complaint ¶¶ 83–86. The "Plaintiff acknowledges that the claim for Negligent Supervision (Count XIII) does not survive." UMS Opposition at 34. Both because Maine does not recognize such a tort, *Mahar v. StoneWood Transp.,* 823 A.2d 540, 543 (Me.2003), and because such a tort would be subject to the notice provisions of the Maine Tort Claims Act, with which I have already determined the plaintiff did not comply, I agree.

## C. Claim Against Nye

The plaintiff asserts a separate claim against Nye under 42 U.S.C. § 1983, alleg-

---

**19.** The plaintiff also asserts that "it is up to a jury to determine whether Nye's conduct so contaminated the proceeding as to lead to an inappropriate result." UMS Opposition at 32. She does not explain how "contamination" or an "inappropriate result" constitute breaches of the Code.

**20.** To the extent that the plaintiff may reasonably be understood to assert a claim, Opposition at 28–32, that the contract was breached because the hearing did not afford her fundamental fairness, *see Gomes,* 304 F.Supp.2d at 130–31, none of the plaintiff's submissions would allow a reasonable factfinder to conclude that any actions by the UMS rose to that level.

ing that he deprived her of her constitutional rights to due process and equal protection.[21]  Complaint ¶¶ 69–72 (Count IX). Nye adopts the UMS defendants' arguments on relevant issues and contends that he is entitled to qualified immunity on these claims.  Defendants [sic] Ken Nye's Motion for Summary Judgment, etc. ("Nye Motion") (Docket No. 41) at 1, 3. The plaintiff argues that the following actions by Nye deprived her of either or both of these constitutional rights:  his questioning of witnesses;  his "biased, manipulative" questioning of witnesses;  his failure to recuse himself;  and his use of the term "love-making" in questioning the alleged assailant.  Plaintiff's Opposition to Defendant Nye's Motion for Summary Judgment ("Nye Opposition") (Docket No. 64) at 1–2.

I have already concluded that the plaintiff was not entitled to due process protection with respect to the hearing.  Accordingly, she has no claim against Nye for deprivation of her right to due process.

The only possible class to which the plaintiff belongs for purposes of equal protection analysis, based on her submissions, is that of females.  In order to succeed on her equal protection claim, the plaintiff must show that Nye treated her differently from the manner in which he treated similarly situated males.  *Barrington Cove Ltd. P'ship*, 246 F.3d 1, 7 (1st Cir.2001).  She makes no attempt to show that Nye did not question male complainants in disciplinary hearings in which he served as faculty advisor or that he recused himself as faculty advisor when male students asked that he do so or were known to him to be the children of individuals with whom he had conflict many years earlier.  Accordingly, she could not recover against Nye for violation of her right to equal protection of the laws based on either of these alleged actions or failures to act.  Assuming *arguendo* that Nye's questioning of witnesses was biased and manipulative in a manner detrimental to the plaintiff because she is a woman—a characterization that is not supported by the transcript of the hearing—and that his use of the term "love-making" discriminated against the plaintiff on the basis of sex, Nye's invocation of qualified immunity would come into play with respect to those actions.

There are two prongs to qualified immunity analysis.  First, the court must determine, as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation.  If the right is clearly established, the court must then ask whether a reasonable similarly situated [state actor] should have understood that the challenged conduct violated that right.

*Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir.1997) (citations and internal punctuation omitted).  Contrary to the plaintiff's assumption, Nye Opposition at 3, it is not the general constitutional rights to due process and equal protection that are at issue in the qualified immunity analysis. The analysis is much more specific.  "The right must be stated with sufficient particularity so that a reasonable [state actor] would understand that what he is doing violates that right."  *Soto*, 103 F.3d at 1064.  The issue here is whether the constitutional duty not to ask biased and manipulative questions of a witness at a college disciplinary hearing and the constitutional duty not to use a term that could be interpreted to favor the position

---

21.  Both parties apparently assume that Nye may be considered to have been a state actor for purposes of this claim, a necessary predicate for a claim under § 1983 against an individual.  *E.g., Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir.2003).

of a male party over that of a female party in questioning a witness at a college disciplinary hearing were clearly established at the time of the hearing. *Id.* The plaintiff cites no authority on this point. Nothing in *Hayut v. State Univ. of N. Y.,* 127 F.Supp.2d 333 (S.D.N.Y.2000), the only case cited by the plaintiff involving gender-based remarks, suggests the existence of such rights. That case involved a motion to dismiss a claim of sexual harassment based on a professor's repeated remarks to a female student throughout the semester, during class; the claim was brought under Title IX. *Id.* at 335, 337.

Even assuming that the two constitutional rights set forth above were clearly established at the time of the hearing, the plaintiff has not shown that a reasonable faculty advisor in Nye's place would have known that using the term "love-making" once to refer to an incident that he otherwise called "sexual activity" and "having sex," Transcript, Student Conduct Committee, University of Southern Maine, July 12, 2002 ("Transcript") (Exh. I to Affidavit of Stephen M. Nelson (Docket No. 43)) at 0015, 0041, was unconstitutional. In the absence of reported case law on point, no reasonable factfinder could conclude that a reasonable faculty advisor would have drawn that conclusion. *See generally Jarrett v. Town of Yarmouth,* 309 F.3d 54, 63–65 (1st Cir.2002) (discussing whether reasonable officer would have known conduct was unconstitutional in light of existing case law). With respect to the claim of biased and manipulative questioning, the plaintiff refers specifically to Nye's alleged attempt to "frame the issue as one where [the plaintiff] wanted to engage in some sexual conduct with [the alleged assailant], but things got carried away[ ] [Student Conduct Committee Transcript at 15.];" Nye's use of the alleged assailant's nickname when addressing him; and Nye's

asking very few' questions of the plaintiff's witnesses, making no attempt to clarify inconsistencies or to bolster consistencies in their testimony, while "extensively clarifying testimony" of the alleged assailant's witnesses. UMS Opposition at 18–19 & n. 11, incorporated by reference in Nye Opposition at 1 (fourth set of brackets in original).

The first two items on this list provide no support for the plaintiff's position. She first mischaracterizes Nye's question at page 15 of the transcript. Nye asked Nelson, who had presented the case against the alleged assailant,

> Steve, I am going to ask you for an interpretation of the events from your perspective. Is your interpretation of the overall picture of what happened—is your interpretation that [the plaintiff] and [the alleged assailant]—that [the plaintiff] was interested in having sex and got herself into a situation in which she reached the point that she did not want to go beyond but [the alleged assailant] forced the issue?

Transcript at 0015. That question cannot reasonably be characterized as an attempt to "frame the issue as one where [the plaintiff] wanted to engage in some sexual conduct with [the alleged assailant] but things got carried away." The question asks the individual who investigated the plaintiff's report for his interpretation of the information that he obtained. It does not assume a particular response, nor does the context support any inference that Nye was attempting to impose a particular interpretation on Nelson. Indeed, the question presumes that, even if the plaintiff were initially interested in a sexual encounter, she changed her mind and the alleged assailant nonetheless forced sexual activity upon her. That version of events would also have required discipline of the alleged assailant under the Code. The

question cannot reasonably be read to demonstrate bias against the plaintiff based on her gender.

Next, Nye's use of a nickname when addressing the alleged assailant is unremarkable, given that the alleged assailant introduced himself that way. *Id.* at 0003, *l.* 21.

A review of the entire transcript shows that Nye did ask fewer questions of the plaintiff's witnesses than he did of the alleged assailant's witnesses, but that fact is not inherently suggestive of discrimination based on sex. I cannot conclude that those questions were intended to bolster the testimony of those testifying in support of the male alleged assailant, and certainly do not see in them any discriminatory animus toward the plaintiff due to her gender. In fact, one of his questions to the alleged assailant suggested doubt about aspects of the alleged assailant's testimony. *Id.* at 0042 *l.* 3–7. I can only conclude that a reasonable person in Nye's position would not have known that the questions at issue were unconstitutional.

Nye is entitled to summary judgment on Count IX.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motions for summary judgment be **GRANTED**.

#### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

August 31, 2004.