### Robert W. HUNTER

v.

### SECURITIES EXCHANGE COMMISSION, Arthur Levitt, John Doe Supervisors of John Heffernan, and John Heffernan.

Civ. A. No. 94–5340.

United States District Court,
E.D. Pennsylvania.

March 15, 1995.

G. Alexander Bochetto, Koji F. Fukumura, Philadelphia, PA, for plaintiff.

Richard M. Humes, James A. Brigagliano, S.E.C., Washington, DC, for defendants.

### MEMORANDUM

WALDMAN, District Judge.

### I. BACKGROUND

This suit by plaintiff against the Securities and Exchange Commission ("SEC"), its chairman and several of its agents arises from an insider trading investigation of plaintiff by the agency. Plaintiff asserts a *Bivens* claim against John Heffernan, an SEC investigator who allegedly violated plaintiff's constitutional due process and privacy rights during the course of the investigation.[1] Plaintiff also seeks to enjoin the securities investigation which he contends has been tainted by the alleged unconstitutional conduct.

Presently before the court is defendants' motion to dismiss plaintiff's amended complaint for failure to state a cognizable claim and lack of subject matter jurisdiction regarding the injunctive claim.[2]

### II. STANDARD OF LAW

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *See Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *See Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Dismissal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984). A complaint may be dismissed when the facts pled and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 179 (3d Cir.1988).

### III. FACTS

The following pertinent facts appear from plaintiff's amended complaint. On March 24, 1994, the SEC issued a formal order authorizing an investigation of whether plaintiff and others committed securities fraud by trading in the securities of Independence Bancorp, Inc. ("Independence") while in possession of material, non-public information, specifically the impending merger of Independent with Corestates Financial Corporation. Plaintiff was a director of Independence. Four days before the merger, plaintiff purchased 20,000 shares of Independence stock and two days later, he purchased another 20,000 shares. Within a month after the merger, plaintiff sold these shares for a substantial profit.

In the course of the investigation, defendant Heffernan interviewed plaintiff's then-girlfriend, "Jane Doe," regarding her knowledge of plaintiff's trading in Independence stock. Thereafter, Mr. Heffernan became romantically involved with Jane Doe who then terminated her relationship with plaintiff.

Plaintiff alleges that Mr. Heffernan aided Doe in her effort to extort money from plaintiff. Doe told Montgomery County law enforcement officials that plaintiff had sexually molested her 11 year old daughter over a period of four years. Plaintiff was arrested

---

1. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971).

2. Defendants also argue that the court lacks personal jurisdiction over defendant Heffernan who admittedly was properly served with the amended complaint because of a technical deficiency in service by plaintiff of the initial complaint. Defendants cite no authority for the unsound proposition that a party may not file and duly serve an amended complaint without first perfecting service of an earlier complaint which he has elected to abandon. With the filing of an amended complaint, the initial complaint is a nullity. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.), *cert. denied.*, —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992).

and charged with sex-related crimes. He was bound over for trial on several of these charges. Doe then filed a civil suit against plaintiff related to the molestation charges and made a demand of $3,000,000 to settle out of court.

In conducting interviews with friends, relatives and acquaintances of plaintiff about his trading of Independence stock, Mr. Heffernan also sought information regarding plaintiff's relationship with Jane Doe and her daughter. Mr. Heffernan also acquired "confidential non-public information" about plaintiff during the investigation from third parties, including documents subpoenaed from financial institutions regarding plaintiff's assets and holdings, which he disclosed to Jane Doe for use in connection with her civil suit.

## IV. *DISCUSSION*

### A. *Bivens Action*

Plaintiff alleges that Mr. Heffernan's abuse of his investigative authority violated plaintiff's Fifth Amendment due process rights and his constitutional right to privacy.

### 1. Due Process Claim

■■■ A plaintiff must allege that he has been deprived of a constitutionally protected "liberty" or "property" interest without due process of law to state a due process claim under the Fifth Amendment. *See Weatherford v. Dole*, 763 F.2d 392, 393 (10th Cir. 1985); *Klein v. Califano*, 586 F.2d 250, 257 (3d Cir.1978). Unless accompanied by an alteration in legal status or extinction of some legally protected right, the infliction of damage to one's personal or professional reputation does not infringe a liberty or property interest. *See Siegert v. Gilley*, 500 U.S. 226, 233–34, 111 S.Ct. 1789, 1794–95, 114 L.Ed.2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Sturm v. Clark*, 835 F.2d 1009, 1012–13 (3d Cir.1987). Even the "serious impairment of future employment prospects" or loss of business opportunities

resulting from an injury to reputation does not elevate a tortious injury to constitutional dimensions. *Siegert*, 500 U.S. at 234, 111 S.Ct. at 1794. *See also Puricelli v. Borough of Morrisville*, 820 F.Supp. 908, 915 (E.D.Pa. 1993), *aff'd*, 26 F.3d 123 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994); *Defeo v. Sill*, 810 F.Supp. 648, 656 (E.D.Pa.1993).

■■■ Plaintiff maintains that defendant Heffernan's questioning of witnesses about the criminal proceedings against plaintiff and about knowledge of any prior child molestation caused more than just reputational harm. He alleges that Mr. Heffernan's investigation resulted in damage to then-existing and future contracts, lost profits from potential business opportunities and lost future employment opportunities. Plaintiff also contends that one reasonably may infer that any "goodwill" associated with his name has also been damaged. These allegations are not sufficient to show a violation of a protected liberty or property interest. The alleged lost economic opportunities are a direct consequence of the damage to plaintiff's reputation.[3]

Plaintiff has failed to set forth a cognizable due process claim.

### 2. Privacy Claim

The Supreme Court has recognized a right of personal privacy which encompasses two types of interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 877, 51 L.Ed.2d 64 (1977). These interests have been termed the "confidentiality" and "autonomy" branches of the right of privacy. The confidentiality branch protects an individual's right not to have his affairs made public by the government. *U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir.1980). The autonomy

---

**3.** Plaintiff argues that his economic loss constitutes deprivation of a property interest protected by Pennsylvania law, however, he can cite no case in which an economic loss resulting from reputational harm was held to be property enti-

tled to constitutional protection. *See Puricelli*, 820 F.Supp. at 914 (rejecting similar attempt to plead constitutional defamation claim based on assertion of property interest protected by state law).

branch encompasses "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Id.* This branch is not implicated in the instant case.

■ Personal financial information is entitled to privacy protection. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 812 F.2d 105, 115 (3d Cir.1987). *See also In re McVane v. Federal Deposit Insurance Corp.,* 44 F.3d 1127, 1140 n. 4 (2d Cir.1995) (rejecting argument that there are no constitutionally protected privacy interests in bank statements and financial data); *DeMasi v. Weiss,* 669 F.2d 114, 119 (3d Cir.1982) (private individuals have legitimate privacy expectation regarding income); *Plante v. Gonzalez,* 575 F.2d 1119, 1136 (5th Cir.1978) ("Financial privacy is a matter of serious concern, deserving strong protection.").

■ Disclosure of confidential personal data may nevertheless be compelled where there is an overriding public interest in obtaining the data. *Westinghouse,* 638 F.2d at 578 (articulating multi-factor balancing test essentially to weigh need for and risk of harm from disclosure of personal information in determining when governmental intrusion into individual's privacy is justified). Plaintiff, however, does not question the right of defendants to obtain the pertinent personal financial information in the course of their investigation. What he complains of is the alleged subsequent disclosure of such information by defendant Heffernan to Jane Doe, a disclosure which defendants do not suggest would have furthered any legitimate public interest.

■ The Supreme Court has expressly declined to decide whether a subsequent intentional (or unintentional) unauthorized disclosure of private information properly obtained by government agents supports a cause of action by the aggrieved party. *See Whalen,* 429 U.S. at 605–06, 97 S.Ct. at 879–80. There is at least one appellate opinion, however, and language in others which suggest that such a subsequent disclosure implicates privacy rights and may be actionable. *See Fadjo v. Coon,* 633 F.2d 1172, 1175 (5th

Cir.1981) (allegation that state official revealed personal information properly obtained from plaintiff in criminal investigation to insurance companies for possible use in resisting benefit claims by him stated constitutional invasion of privacy claim). *See also Fraternal Order of Police,* 812 F.2d at 118 ("that protected information must be disclosed to party with particular need for it ... does not strip the information of its protection against disclosure" to others without such need); *Westinghouse,* 638 F.2d at 579 (noting importance of effective measures to prevent subsequent unauthorized disclosure to decision to compel initial disclosure). Also, district courts in the Third Circuit have held that a subsequent improper disclosure by state actors of confidential information properly obtained by them may support a § 1983 invasion of privacy claim. *See Faison v. Parker,* 823 F.Supp. 1198, 1201 n. 3 (E.D.Pa.1993); *Doe v. Borough of Barrington,* 729 F.Supp. 376, 383–85 (D.N.J.1990).

Most of the reported constitutional privacy claim cases involve personal information received or compelled by government from individuals or the subsequent disclosure of such information which has been so obtained. Of course, only items of information in which a party has a legitimate or reasonable expectation of privacy are protected. *Fraternal Order of Police,* 812 F.2d at 112; *Kimberlin v. U.S. Dept. of Justice,* 788 F.2d 434, 438 (7th Cir.1986); *Slayton v. Willingham,* 726 F.2d 631, 635 (10th Cir.1984). Defendants rely on *U.S. v. Miller,* 425 U.S. 435, 96 S.Ct. at 1619, 48 L.Ed.2d 71 (1976) to argue that plaintiff has no protectable privacy interest in information obtained from financial institutions with which he had a relationship.

The Supreme Court in *Miller* held that a bank customer has no protected Fourth Amendment interest in records of his accounts maintained by his banks as to which he "can assert neither ownership nor possession" and which "are business records of the banks." *U.S. v. Miller,* 425 U.S. at 440, 96 S.Ct. at 1623. The Court perceived that enactment of the Bank Secrecy Act reflected a Congressional assumption that a customer had no legitimate expectation of privacy in

records kept by his bank.[4] *Id.* at 442, 96 S.Ct. at 1623. At the same time, the Court suggested that a recognized legal privilege may create a reasonable expectation of privacy in certain information conveyed to a third party. *Id.* at 443 n. 4, 96 S.Ct. at 1624 n. 4.

Also, in later discussing one's legitimate expectation of privacy in personal material in the context of a civil claim, the Supreme Court suggested that such expectation does not necessarily turn on ownership or actual control and may arise from custom or tradition. *See Nixon v. Administrator of General Services,* 433 U.S. 425, 458, 97 S.Ct. 2777, 2798, 53 L.Ed.2d 867 (1977) (pattern of control of access to information by President with Congressional acquiescence). *See also Fraternal Order of Police,* 812 F.2d at 116 (essence of information entitled to privacy protection is its general unavailability and treatment as confidential).[5]

Further, Congress reacted to *Miller* by enacting the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.* The Act is premised on a recognition of the "customers' right of privacy" in records of their affairs maintained by financial institutions and reflects a Congressional intent to protect such records from disclosure except for legitimate law enforcement purposes or pursuant to judicial process. *Young v. U.S. Dept. of Justice,* 882 F.2d 633, 636–37 (2d Cir.1989).

In discussing *Miller,* the Court in *Young* observed "that customers do not have a fourth amendment interest in these records does not mean that they could not have any privacy interest in a civil context." *Id.* at 642 n. 11.[6] The Court noted that most customers assume that bank records of their financial transactions are confidential and that this assumption has long been fostered by banking institutions. *Id.* at 642–43 (discussing but not deciding whether New York would

recognize cause of action for breach of confidentiality by bank). *See also Peoples Bank of Virgin Islands v. Figueroa,* 559 F.2d 914, 917 (3d Cir.1977) (bank could not make unauthorized disclosure of customer's financial information "without breaching duties of confidentiality and privacy").

In an age of rapid automated data collection and retrieval, sophisticated eavesdropping devices and high tech surveillance equipment and at a time when considerable personal information is accumulated by government for various purposes and one can engage in few endeavors without generating a record of some type, there is very little in which one's privacy is assured as a matter of fact. If the confidentiality prong of the privacy right recognized by the Supreme Court has any real force, it is because a reasonable expectation of privacy may arise from custom, privileges, laws or regulations proscribing or limiting acquisition and disclosure of personal information which reflect a societal judgment that certain matters should be treated with some measure of confidentiality. *See Reporters Committee,* 489 U.S. at 762, 764–66, 109 S.Ct. at 1476, 1477–78 (stating privacy interest for FOIA exemption purposes implicates right of nondisclosure of personal matters articulated in *Whalen* and citing Privacy Act as well as other statutory and regulatory limits on disclosure as evincing privacy interest of subject in pertinent information); *Kimberlin,* 788 F.2d at 438–39 & n. 6 (Privacy Act creates legitimate limited privacy expectation of inmate in financial information in hands of prison officials); *Soucie v. County of Monroe,* 736 F.Supp. 33, 36–37 (W.D.N.Y.1990) (finding reasonable expectation of privacy in personal information contained in presentence report predicated on state criminal law limiting disclosure which supported § 1983 claim for unauthorized

---

**4.** *See* 12 U.S.C. § 1829b (requiring banks to prepare and maintain records of customers' transactions).

**5.** That "an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *U.S. Dept. of Justice v. Reporters Committee,* 489 U.S. 749, 770, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1989) (quoting Rehnquist, Is an Expanded Right of Privacy Consistent with Fair

and Effective Law Enforcement?, Nelson Timothy Stephens Lectures, University of Kansas Law School, pt. 1, p. 13 (Sept. 26–27, 1974)).

**6.** The Fourth Amendment protects the security of persons in "their" papers. The confidentiality branch of the right to privacy protects persons against disclosure of their personal affairs by government. *Whalen,* 429 U.S. at 599, 97 S.Ct. at 877; *Westinghouse,* 638 F.2d at 577.

publication). *See also Doe,* 729 F.Supp. at 386–87 (voluntary communication of personal information for "selective" purpose may undermine common law privacy claim but does not defeat § 1983 privacy action for inappropriate disclosure by recipient to others).

Congress has prohibited the disclosure of information relating to the "amount or source of any income, profits, losses or expenditures of any person" by a federal agent which he obtained during the course of an investigation or in the performance of his official duties. 18 U.S.C. § 1905. *See also* 5 U.S.C. § 552(b)(4) (protecting from disclosure by federal agencies generally confidential personal financial information in its files); 15 U.S.C. § 78u(h)(1) (generally making Right to Financial Privacy Act applicable to SEC); 17 C.F.R. § 230.122 (limiting disclosure of non-public information obtained by SEC agents in course of investigation). The Third Circuit cited the Privacy Act[7] and regulations governing access to personal information held by federal agencies in recognizing a privacy interest of employees in personal information contained in their employer's records. *Westinghouse,* 638 F.2d at 576–77.

In the instant case, plaintiff had no legitimate expectation that records of financial institutions reflecting his transactions or worth would be cloaked with "an impenetrable veil of privacy in all contexts." *Young,* 882 F.2d at 636. When he engaged in communications or transactions with financial institutions and implicitly consented to their maintenance of records reflecting his personal affairs, however, plaintiff reasonably may have expected that this information could be acquired and disclosed by government agents only as provided by law. It would be reasonable for him to expect that financial records obtained by a government agent in connection with an investigation would be "used only for the purpose for which they were originally obtained," *see* 12 U.S.C. § 3413(h)(4), and disclosed only for the purposes delimited by the Right to Financial Privacy Act. He retained a legitimate, if limited, expectation of privacy in information derived from records of financial institutions pertaining to his relationship with them, *see*

12 U.S.C. § 3401(2), sufficient to protect against gratuitous disclosure by a government agent to a private party for her use in pursuing her personal objectives.

Plaintiff has set forth a *Bivens* claim against defendant Heffernan for invasion of privacy sufficient to withstand a motion to dismiss.

### B. Request for Injunctive Relief

Plaintiff seeks to enjoin permanently the SEC investigation, which he alleges is causing him irreparable harm and depriving him of his constitutional rights. Defendants contend that the court lacks subject matter jurisdiction to enjoin an SEC investigation and that plaintiff has failed to state a cognizable claim for injunctive relief.

■ To obtain injunctive relief, a party must show that he faces irreparable injury, that there are no adequate legal remedies, that the balance of any competing claims of injury weighs in his favor and that granting such relief is not contrary to the public interest. *Public Interest Research Group, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 82 (3d Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). A party may not obtain a permanent injunction upon a showing of potential harm, but rather must show that an actual threat of harm exists. *McLendon v. Continental Can Co.,* 908 F.2d 1171, 1182 (3d Cir.1990).

Plaintiff relies on the Fifth Amendment guarantee of due process of law as the basis for jurisdiction and cites the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706 (1977 & supp. 1994), for the appropriate standard of review of agency actions. Section 704 of the APA, however, limits court review to *final* agency actions. In the absence of finality, a district court lacks jurisdiction to review agency action. *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994).

■ Defendants correctly contend that a decision to initiate an investigation is interlocutory in nature and generally is not subject to judicial review under the APA. *See*

---

7. *See* 5 U.S.C. § 552a *et seq.*

*Federal Trade Comm'n. v. Standard Oil of California,* 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980); *Blinder, Robinson & Co. v. Securities & Exchange Comm'n.,* 692 F.2d 102, 106 (10th Cir.1982). There are, however, limited exceptions to the final agency action doctrine. The Third Circuit has declined to require exhaustion "when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights, ... when resort to administrative procedures is 'clearly shown to be inadequate to prevent irreparable injury,' or when exhaustion is 'futile.' " *Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d 231, 245 (3d Cir.1980) (citations omitted); *First Jersey Sec., Inc. v. Bergen,* 605 F.2d 690, 696 (3d Cir.1979).

█ Defendants also correctly contend that there is an absence of judicially-manageable standards by which to review SEC investigative actions. Sections 21(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(a) and (b), give the SEC considerable discretion in determining when and how to investigate possible violations of the statute. *Securities & Exchange Comm'n. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 745, 104 S.Ct. 2720, 2726, 81 L.Ed.2d 615 (1984). The pertinent law and regulations do not contemplate or provide objective or manageable criteria to review an exercise of discretion by the SEC as to whom and how to investigate. *See Treats Internat'l. Enter. v. Securities & Exchange Comm'n.,* 828 F.Supp. 16, 18 (S.D.N.Y.1993). Even in the absence of such standards or criteria, however, federal courts should generally exercise jurisdiction when an agency action violates an individual's constitutional rights. *See Webster v. Doe,* 486 U.S. 592, 603–04, 108 S.Ct. 2047, 2053–54, 100 L.Ed.2d 632 (1988); *Local 2855, AFGE v. United States,* 602 F.2d 574, 580 (3d Cir. 1979) ("Even when a court ascertains that a matter has been committed to agency discretion by law, it may entertain charges ... that

the decision violates a constitutional ... command."); *Lyle v. Sivley,* 805 F.Supp. 755, 758 (D.Ariz.1992).

Plaintiff concedes that the decision of the SEC to investigate whether he engaged in insider trading is lawful. He has asserted conclusively but has alleged no facts to show that the alleged disclosure to Doe has vitiated the investigation or prevents the SEC from reaching a reasoned conclusion based on pertinent evidence about whether plaintiff violated the law.[8] Plaintiff has not alleged any facts to suggest a likelihood of future unauthorized disclosures of investigatory information and apparently cannot do so as the parties agree that Mr. Heffernan has been removed from the investigation. Plaintiff's assertion that he will suffer irreparable harm to his reputation and business prospects as well as emotional distress cannot support the injunctive relief he seeks.

There is no constitutional right not to be investigated for suspected violations of federal law by an agency authorized by Congress to conduct such investigations in its discretion, or not to be injured in one's reputation or business prospects as a consequence of such an investigation. *See Federal Trade Comm'n. v. Standard Oil of California,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980); *Paul v. Davis,* 424 U.S. 693, 709–12, 96 S.Ct. 1155, 1164–66, 47 L.Ed.2d 405 (1976); *Hannah v. Larche,* 363 U.S. 420, 443, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960); *Sturm v. Clark,* 835 F.2d 1009, 1011–13 (3d Cir.1987). Virtually anyone under investigation, however innocent or confident of vindication he may be, will sustain emotional distress. If this were a ground for enjoining an investigation, virtually no investigation of suspected wrongdoing could ever be completed.

There is a substantial public interest in permitting a federal agency to exercise its statutory duties. *See Securities & Exchange Comm'n. v. Management Dynamics, Inc.,*

---

**8.** Plaintiff asserts that to induce Mr. Heffernan to assist her, Ms. Doe gave him an exaggerated account of plaintiff's stock transactions. Unfortunately, during official investigations some people provide exaggerated or outright false information. This is not a basis, however, for permanently enjoining any investigation during which

it may appear that such unfortunate conduct has occurred. If plaintiff is charged, he may assert in his defense that inculpatory evidence is false or tainted, which itself provides an adequate legal alternative to an injunction. *See First Jersey Securities, Inc. v. S.E.C.,* 553 F.Supp. 205, 212 (D.N.J.1982).

515 F.2d 801, 808 (2d Cir.1975). The harm to the SEC in its ability to fulfill its mission generally and with regard to Independence if an injunction were granted outweighs the harm alleged by plaintiff, the type of harm which necessarily accompanies many official investigations.

Plaintiff has not alleged facts from which it appears that his constitutional rights will be violated or threatened if the SEC investigation is permitted to continue to its conclusion. It follows that the court lacks subject matter jurisdiction to entertain a request to review and enjoin the investigative actions of the SEC in this case.

## V. CONCLUSION

Plaintiff's due process and injunctive claims will be dismissed. The motion to dismiss plaintiff's *Bivens* privacy claim against defendant Heffernan for the alleged disclosure to Jane Doe will be denied.

An appropriate order will be entered.

## ORDER

**AND NOW,** this 15th day of March, 1995, upon consideration of defendants' Motion to Dismiss Amended Complaint and plaintiff's response thereto, consistent with the accompanying memorandum, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** as to plaintiff's due process and injunctive relief claims which are **DISMISSED** and **DENIED** as to plaintiff's privacy claim for damages against defendant Heffernan.