STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-60
*- CUM - 3/05*

ANGELA THERIAULT

2005 MAY 13 P 3: 13

Plaintiff

v.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

UNIVERSITY OF SOUTHERN MAINE,
THE TRUSTEES OF THE UNIVERSITY
OF MAINE SYSTEM and
KENNETH NYE in his Official Capacity
as Faculty Advisor to the Student Conduct
Committee and in his Individual Capacity.

Defendants.

This matter is before the court on the defendants' motion for summary

judgment pursuant to M.R. Civ. P. 56.

## FACTUAL BACKGROUND

Plaintiff, Angela Theriault, originally filed the instant action in this court and

asserted multiple state and federal claims against the defendants, The University of

Southern Maine (USM), the Trustees of the University of Maine System (UMS) and USM

professor, Ken Nye.[1] The action was subsequently removed to the federal district court

in Maine. In the federal court action, defendants moved for summary judgment on all

counts and Magistrate Judge Cohen issued a recommendation that judgment be

entered in favor of defendants on all counts, both federal and state. *See Theriault v.*

*Univ. of Southern Maine*, 353 F. Supp. 2d 1, 2004 U.S. Dist. LEXIS 17364 (D. Me. 2004)

(hereinafter *Theriault I*). Plaintiff filed her Objection and, in response, Judge Carter

affirmed the Recommendation and granted summary judgment to defendants on the

federal claims. *Theriault v. Univ. of Southern Maine*, 353 F. Supp. 2d 1, 2004 U.S. Dist. LEXIS 19702 (hereinafter *Theriault II*). With respect to plaintiff's claims brought under state law, however, Judge Carter rejected the Recommendation "on the basis . . . of considerations of comity and judicial economy," denied summary judgment on those counts and remanded them to this court. *Id.* at*2, n.2.

This matter is now before this court on defendants' motion for summary judgment on the remaining state claims. At the hearing on the instant motion, the parties agreed that the statements of material fact filed in this court pursuant to M.R. Civ. P. 56(h) are substantially the same as those that were filed in the federal court. Accordingly, the following recitation of the undisputed material facts is substantially similar to that contained in Magistrate Judge Cohen's Recommended Decision.

The University of Southern Maine is an administrative unit of the University of Maine System (UMS) and has no independent legal status. Defs' S.M.F. ¶ 1; Pl's Responsive S.M.F. ¶ 1. Any discipline of a student of the UMS is governed by the Student Conduct Code, which prohibits activities by students that are considered to "directly and significantly interfere" with the University's educational mission or with the University's "subsidiaries [sic] responsibilities," including "protecting the health and safety of persons in the campus community." *Id.* at ¶¶ 2-3. Section V of the Code, entitled "Procedures," provides that "[e]ach of the University institutions may adopt procedures for carrying out the provisions of this Code within the guidelines set forth by the Code as described below and consistent with the Code." *Id.* at 4. The Code provides that "administration and interpretation of the student conduct code shall be solely within the jurisdiction of the [Conduct] Officer, [Student Conduct] Committee and the President or his/her designee on each campus, such interpretation being

---

[1] Claims against an additional defendant, Charles Rittershaus, have been dismissed.

pursuant to the procedures of this Code." *Id.* at ¶¶ 6.[2]  The Code further provides that the Student Conduct Committee ("the Committee") "shall consist of at least three, but no more than seven, members, at least one of whom shall be a student and one a Presidential designee.  The number of Committee members, the composition of the Committee, and the method of selection shall be determined by each campus in a manner approved by the President." *Id.* at ¶ 8.  There is some level of faculty involvement on each of the student conduct committees throughout the UMS with faculty serving as voting members of the committees in some instances.  Defs' S.M.F. ¶ 9.[3]

Stephen Nelson serves as the Assistant to the Vice President for Community Standards at the University of Southern Maine and as that campus's Conduct Officer. *Id.* at ¶ 10; Pl's Responsive S.M.F. ¶ 10.  He is the administrator with primary responsibility for investigating and adjudicating alleged violations of the Code.  *Id.*  At the University of Southern Maine, the Committee is comprised entirely of undergraduate and graduate students, assisted by non-voting faculty advisors.  *Id.* at ¶ 11.  There are presently three faculty advisors to the Committee, including defendant Kenneth Nye, but generally only one of those advisors is present during Committee hearings.  *Id.*

It has been the general practice at the University of Southern Maine at least since 1999 for the Committee's faculty advisor to participate in the questioning of

---

[2] The court overrules plaintiff's objection to Defs' S.M.F. ¶ 6.  Contrary to plaintiff's contentions, paragraph 6 simply quotes language from the Code and does not purport to make a legal conclusion. *See* Defs' S.M.F. ¶ 6.

[3] The court overrules plaintiff's objection to Defs' S.M.F. ¶ 9.  Contrary to plaintiff's contentions, this statement is supported by the record and does not constitute hearsay. *See* Wittbank Aff. ¶ 10. Further, plaintiff's assertion that "members of the Student Conduct Committee must be students and they cannot be faculty members," is not supported by the cited authority. *See* Opp. S.M.F. ¶ 9; and Smith Dep. at 18-19.

complainants, respondents, and witnesses. Defs' S.M.F. ¶ 13.[4]    It is also the general practice for the Committee's faculty advisor to be present and assist the Committee during its deliberations. Id. ¶ 15.[5]

The Code provides for the participation of "advisors," who are defined as individuals who advise or support "any party involved in the process." Defs' S.M.F. ¶ 17. Pl's Responsive S.M.F. ¶ 17. The Code provides that "members of the Committee may question witnesses or parties to the proceeding" and, further, "that witnesses or parties may ask questions of other witnesses or parties only at the discretion of and through the Chair." Id. ¶ 18.

During the 2001-02 academic year, plaintiff was a first-year student at the University of Southern Maine. Id. ¶ 19. On the night of April 13, 2002, plaintiff attended a party at an off-campus fraternity in Gorham, Maine. Defs' S.M.F. ¶ 20; Pl's Responsive ¶ 20; and Pl's Opp. S.M.F. ¶ 7. On Sunday, April 14, 2002, plaintiff's resident advisor, Lynn Clements, was told that the plaintiff had been sexually assaulted the prior evening by an unknown male student at the party. Defs' S.M.F. ¶ 21; Pl's Responsive S.M.F. ¶ 20. Clements accompanied plaintiff to the University of Southern Maine police. Id. ¶ 22. On April 14 or 15, 2002 Nelson learned that plaintiff had filed a report that she had been raped at a fraternity house the prior weekend. Id. ¶ 24. On April 15, Nelson contacted plaintiff by letter and offered his assistance with respect to potential discipline under the Code of the student responsible for the alleged assault. Id.

After meeting with plaintiff, Nelson began an investigation of her allegations. Id. ¶ 25. Nelson immediately suspended the alleged assailant from the University of

---

[4] The court notes plaintiff's objection to this assertion. The statement made in Defs' S.M.F. ¶ 13, however, is supported by the citations given and the factual assertions plaintiff makes in support of her denial are not responsive.
[5] Contrary to plaintiff's assertions, this statement is not hearsay but, rather is based on the personal knowledge of Stephen Nelson. See Nelson Aff.

4

Southern Maine and gave him three hours from the receipt of the suspension notice to leave the campus. *Id.* On April 25, 2002, Nelson sent the alleged assailant a letter informing him that he was not to have any contact with plaintiff and that he could not be present on any University of Southern Maine property. *Id.* ¶ 26. On May 9, 2002, Nelson concluded his investigation and issued a decision finding the alleged assailant "responsible" for sexual assault and for "conduct threatening or endangering the health or safety of any individual," both stemming from the alleged sexual assault of plaintiff. *Id.* ¶ 27. The University of Southern Maine imposed the following sanctions on the alleged assailant: dismissal from the UMS, a permanent separation from all units in the UMS, subject to review after five years; and a criminal trespass notice barring him from University of Southern Maine property for five years. *Id.* ¶ 28. The alleged assailant filed a timely appeal from that decision on May 15, 2002. *Id.* ¶ 29. An appeal hearing before the Committee was scheduled for July 12, 2002. *Id.*

On June 13, 2002 Nelson sent plaintiff a letter outlining her options in terms of participating in the Committee hearing. *Id.* ¶ 30. For example, plaintiff was given the option of testifying over speakerphone, rather than in person, and the option of participating as a witness or co-complainant. *Id.* On June 17, 2002, Nelson sent plaintiff a letter with additional information regarding the hearing, including the names of the Committee members and their faculty advisor, a list of invited witnesses, a copy of the Code, a copy of procedures to be used at the hearing, and a copy of her police statement. *Id.* ¶ 31. In that letter, Nelson offered to contact any additional witnesses that plaintiff wanted to appear at the hearing, and to meet with her to review the case and her testimony in preparation for the hearing. *Id.* ¶ 32. Plaintiff met with Nelson a handful of times. *Id.* ¶ 33. As the process continued, Nelson kept plaintiff informed. *Id.* ¶ 34.

At the hearing on July 12, 2002, plaintiff was represented by counsel. *Id.* ¶ 36. Plaintiff's view of the alleged assailant was blocked by a partition placed between them, at her request. *Id.* ¶ 37. Plaintiff was permitted to have a rape crisis counselor present throughout the hearing to provide support. *Id.* ¶ 38.

The chair of the Committee during the hearing was a female second-year law student who had participated in approximately 52 hearings prior to the one held on July 12, 2002. *Id.* ¶¶ 39-40. There were four other female students on the Committee for that hearing. *Id.* ¶ 42. Defendant Nye served as the non-voting faculty advisor to the Committee for that hearing. *Id.* ¶ 43. Defendant Nye had served in that role for approximately nine years and had attended approximately 55 Committee hearings prior to that held on July 12, 2002. *Id.* ¶ 44.

At the outset of the hearing, Nelson provided the Committee with an explanation of his investigation and the basis for reaching the conclusion that the alleged assailant was responsible for the charges asserted against him. *Id.* ¶ 45. The Committee then heard testimony from, and asked questions of, twelve witnesses, including plaintiff and the alleged assailant. *Id.* ¶ 46. After plaintiff testified, Committee members and defendant Nye asked her follow-up questions. *Id.* ¶ 47. Similarly, when the alleged assailant completed his statement, he responded to questions from the Committee and defendant Nye. *Id.* At the conclusion of the testimony of all witnesses, Nelson provided a recommendation to the Committee regarding charges and sanctions against the alleged assailant. *Id.* ¶ 51. Plaintiff's attorney was provided the opportunity to make a closing argument, as was the alleged assailant's father. *Id.*

The Committee members and defendant Nye then went into a closed session for deliberations. *Id.* ¶ 52. When the Committee returned, the chair reported that the Committee found the alleged assailant not responsible for the charges and it imposed no sanctions. *Id.* ¶ 53. The Committee did, however, recommend that the alleged

assailant have no contact with plaintiff. *Id.* Plaintiff was shocked by the Committee's decision. *Id.* ¶ 57.

Plaintiff's father had been a student at Rumford High School during the time that defendant Nye served as the school's principal. Plaintiff's father characterizes his relationship with defendant Nye as "stormy," based on two altercations between the two while plaintiff's father was a student. *Id.* ¶ 62. The two had no contact between the time plaintiff's father graduated in 1979 and the discipline hearing on July 12, 2002, twenty-three years later. *Id.* Defendant Nye recalls his relationship with plaintiff's father as "good." *Id.* ¶ 63. Plaintiff's father objected to defendant Nye being the faculty advisor when he was told of Nye's assignment prior to the hearing. Pl.'s Opp. S.M.F. ¶ 43; Defs' Reply S.M.F. ¶ 43.

Committee members do not recall what, if anything, defendant Nye said during deliberations following the hearing. Defs' S.M.F. ¶ 64; Pl.'s Responsive S.M.F. ¶ 64. Defendant Nye recalls that he said during deliberations that he found the alleged assailant's story to be more credible than the plaintiff's. *Id.* ¶ 65.

On September 12, 2002 Nelson learned that the plaintiff and the alleged assailant had registered for the same class. *Id.* ¶ 71. University of Southern Maine Vice President, Craig Hutchinson, contacted the alleged assailant regarding his enrollment in that class and, as a result, the alleged assailant transferred to another class. *Id.* ¶ 72.

Following the Committee's decision, plaintiff filed an action under M.R. Civ. ¶. 80C. That action was subsequently dismissed. Plaintiff then filed the instant action, which was removed to the federal district court. Following the federal court's entry of summary judgment in favor of defendants on the federal claims, the remaining state claims include: Count V – Violation of Due Process/Defamation against the University defendants and defendant Nye; Count VI – Violation of Equal Protection against the University defendants and defendant Nye; Count X – Breach of Contract against the

7

University defendants; Count XI – Negligence against the University defendants and defendant Nye; Count XII – Breach of Duty of Good Faith and Fair Dealing against the University Defendants and defendant Nye; Count XIII – Negligent Supervision against the University Defendants.

## DISCUSSION

### Standard of Review

Summary judgment is proper if there is no genuine issue as to any material fact. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. In considering a motion for summary judgment, the court must "consider the evidence and reasonable inferences that may be drawn from the evidence in the light most favorable to the party against whom the summary judgment [is sought] in order to determine if the parties' statements of material facts and referenced record evidence reveal a genuine issue of material fact." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575).

### Counts VI, XI, XII, & XIII

At the hearing on the instant motion, plaintiff acknowledged that her arguments in opposition to summary judgment, at least with respect to Counts VI, XI, XII and XIII do not substantially differ from those made to Magistrate Judge Cohen in the federal court. Additionally, plaintiff did not point to a fundamental flaw in Judge Cohen's analysis or argue that his conclusion that defendants were entitled to judgment as a matter of law on those counts was error. Instead, plaintiff made the same arguments in this court that she made in the federal court and conceded at the hearing that she was focusing her efforts in this action primarily on her due process and breach of contract claims.

After reviewing Magistrate Judge Cohen's Recommended Decision on Counts VI, XI, XII and XIII, the court finds his analysis and legal conclusions sound and persuasive. Accordingly, the court adopts the conclusions contained in Magistrate Judge Cohen's Recommended Decision with respect to Counts VI, XI, XII and XIII of Plaintiff's complaint and GRANTS defendants' motion for summary judgment as to those counts. *See Theriault I*, 353 F. Supp. 2d 1.

Count V: Due Process

In Count V plaintiff alleges that her right to due process under the Maine Constitution was violated in the following ways: (1) denial of the right to cross-examination; (2) bias of defendant Nye, the faculty advisor; (3) the University of Southern Maine's refusal to recuse or remove defendant Nye; (4) improper training of defendant Nye; and (5) the lack of a right of appeal. Although Magistrate Judge Cohen analyzed plaintiff's due process claims and determined that plaintiff received all the process she was due under both the United States Constitution and the Maine state constitution,[6] plaintiff argues that that conclusion was in error and urges this court to deny defendants' motion for summary judgment.

In support of their motion for summary judgment, defendants argue first that plaintiff has failed to establish that she was deprived of any constitutionally protected interest. Defendants argue that insofar as plaintiff alleges that damage to her reputation constituted a deprivation of a property interest, that claim must fail. According to defendants, damage to reputation perpetrated by the government, standing alone, does not amount to a deprivation of a protected property interest. Defendants further argue that plaintiff has failed to establish any such damage.

---

[6] *See Theriault I*, 353 F. Supp. 2d at *7 (explaining that state constitutional claims are analyzed in the same manner as federal constitutional claims) (citing *Fowles v. Stearns*, 886 F. Supp. 894, 899 n.6 (D. Me. 1995)). *See also Norton v. Hall*, 2003 ME 118, ¶ 17, n.3, 834 A.2d 928, 933.

Further, insofar as plaintiff alleges that a right to public education constitutes a property interest of which she was deprived, defendants argue that no denial of such a right has been implicated given that plaintiff did not face risk of expulsion or suspension. Finally, defendants maintain that even if a constitutionally protected right was impacted, plaintiff was afforded all the process she was due.

As Magistrate Judge Cohen observed in *Theriault I*, "[n]o process is due . . . unless there is an underlying interest that is protected by the Fourteenth Amendment." *Theriault I*, 353 F. Supp. 2d at * 7 (citing *Johnson v. Rodriguez*, 943 F.2d 104, 109 (1st Cir. 1991)). Plaintiff asserts that the interests impacted in the instant case are a property right in a public education as well as a liberty interest in reputation and that those interests are entitled to due process protection. *See* Pl.'s Opp'n to Defs' Mot. Summ. J. at 11. The court disagrees.

Although plaintiff is correct that courts have recognized a student's right to due process in the context of university disciplinary proceedings that right to due process has been limited to students whose "future attendance at the educational institution is at issue." *Theriault I*, 353 F. Supp. 2d at *8. Indeed, since Magistrate Judge Cohen issued his recommended decision in *Theriault I*, another case involving student disciplinary proceedings in the UMS has been decided in the federal district court in which that court explained that "[a] student 'facing expulsion or suspension from a public educational institution is entitled to the protections of due process.'" *Gomes*, 2005 U.S. Dist. LEXIS 6878 at *16 (D. Me. April 8, 2005) (quoting *Gorman v. Univ. of Rhode Island*, 837 F. 2d 7, 12 (1st Cir. 1988)).

In the instant action, plaintiff was the complainant, not the alleged assailant. Accordingly, she did not face expulsion or suspension. Given, therefore, that plaintiff's future attendance at USM was not at issue, the court concludes, as did Magistrate Judge Cohen, that no constitutionally protected property interest was at stake in this case and

plaintiff was therefore not entitled to the protections of due process. *See Theriault I*, 353 F. Supp. 2d at *7-*8.

With respect to plaintiff's assertions that a liberty interest in her reputation was impacted in a constitutionally impermissible manner, the court similarly concludes that plaintiff has failed to demonstrate a genuine issue of material fact regarding her due process claims. Because Magistrate Judge Cohen thoroughly and persuasively analyzed the relevant facts and legal principles applicable to plaintiff's liberty interest argument, the court adopts his analysis and conclusions. *See Theriault I*, 353 F. Supp. 2d at * 8-*9. As Magistrate Judge Cohen explained, a liberty interest in reputation "is subject to due process protection only when accompanied by injury to another constitutionally protected interest." *Id.* at *8 (citing *Paul v. Davis*, 424 U.S. 693, 701). Here, "the plaintiff's property interest in a public education was not at issue in the Committee hearing and any alleged loss of educational opportunity was due to [plaintiff's] subjective response to the outcome of the hearing." *Id.* Further, defendant Nye's reference to the alleged assault as "love making," although insensitive and upsetting to plaintiff,[7] was not "'accompanied by an alteration in legal status or extinction of some legally protected right,' nor could it have been." *Id.* at * 9. (quoting *Hunter v. SEC*, 879 F. Supp. 494, 497 (E.D. Pa. 1995)). Accordingly, "no underlying liberty interest of plaintiff was at stake at the Committee proceedings," *id.*, and defendants' motion for summary judgment on Count V is therefore GRANTED.

Count X: Breach of Contract

Count X of the complaint alleges that the university defendants breached certain contractual obligations plaintiff alleges were owed to her. In support thereof, plaintiff argues first that a contractual relationship existed between plaintiff and the university

---

[7] *See* Pl's Opp. S.M.F. ¶¶ 46 & 47.

11

defendants by virtue of the Student Conduct Code. She next argues that the terms of the contract were violated by the university defendants' failure to provide plaintiff with a "fundamentally fair" hearing as plaintiff alleges the university defendants were obligated to do. Plaintiff argues that the hearing that was conducted was fundamentally unfair and in violation of the Code's preamble primarily due to defendant Nye's participation in, and conduct during, the hearing.

The language of the Code at issue in this case reads, in relevant part: "In the enforcement of this code, the University functions in an administrative manner. The University's administrative process affords fundamental fairness but does not follow the traditional common law adversarial method of a court of law." Student Conduct Code, Nelson Aff. Exh. A. The Code further provides a number of procedures to be followed in proceedings before the Student Conduct Committee including the right of the respondent and the complainant to "challenge for cause any member of the Committee." *Id.* In addition, under the Code:

> At any time during the proceedings, members of the Committee may question witnesses or parties to the proceeding; witnesses or parties may ask questions of other witnesses or parties only at the discretion of and through the Chair. Cross examination by an advisor of either party is not permitted. The advisor may not speak at the hearing at such time as his/her advisee's presentation is made to the Committee.

*Id.*

According to plaintiff, defendant Nye's reference to the alleged sexual assault as "love-making" "established [Nye's] bias and resolve." Pl's Opp. to Defs' Mot. Summ. J. at 27. In addition, plaintiff argues that Nye's reference to the alleged assailant as "Charlie" rather than "Charles," as well as the manner in which Nye questioned the witnesses for the alleged assailant, rendered Nye's alleged "biased view that [the plaintiff] 'got what she deserved,' . . . implicit, if not explicit in the hearing." *Id.* Finally, plaintiff argues that because she "attempted at every stage to recuse Mr. Nye," which

requests were denied, she was denied a fundamentally fair hearing.[8] The court disagrees.

As Magistrate Judge Cohen observed, "a contract exists between a university and its students." *Theriault I*, 353 F. Supp. 2d at * 15 (citing *Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 130 (D. Me. 2004)). *See also Goodman v. President & Trs. of Bowdoin Coll.*, 135 F. Supp. 2d 40, 55 (D. Me. 2001). Additionally, "[t]he terms of the contract may include statements in the Code." *Id.* (citations omitted).

After reviewing the "fundamentally fair" language quoted above, and applicable case law, the court concludes that any contractual obligation the university defendants may have had to provide a fundamentally fair hearing is akin to due process. *See Gomes v. University of Maine*, 2005 U.S. Dist. LEXIS 6878 at *90 (D. Me. April 8, 2005) ("The concept of 'fundamental fairness' is equivalent to due process.") (citing *Newman v. Massachusetts*, 884 F.2d 19, 23 (1st Cir. 1989)). Indeed, the plain language of the Code provision at issue states that the "University's administrative *process* affords fundamental fairness . . .." Student Conduct Code, Nelson Aff. Exh. A. (emphasis added). Determining whether the process afforded the plaintiff was fundamentally fair, therefore, requires an

---

[8] Plaintiff also appears to argue, secondarily, that the university defendants breached individual provisions of the code relating to, for example, her alleged right to challenge Mr. Nye's involvement in the hearing, and Mr. Nye's authority to ask questions of witnesses during the hearing. According to plaintiff these allegations that particular provisions of the Code were breached are "only a small portion of [her] complaint." Pl's Opp. to Defs' Mot. Summ. J. at 27, n.18. The crux of her contract claim is that her right to a fundamentally fair hearing was violated by the conduct of Mr. Nye. *Id.* To the extent, however, that plaintiff alleges that individual Code provisions relating to recusal or participation of a faculty advisor were breached, the court agrees with Magistrate Judge Cohen that "the provisions of the Code which plaintiff cites cannot reasonably be read to prohibit the involvement of a faculty advisor, to accord the parties the right to challenge the appointment of a faculty advisor, or to prohibit the faculty advisor from questioning witnesses." *Theriault I*, 353 F. Supp. 2d at 15.

inquiry equivalent to the inquiry implicated by plaintiff's due process claims. *See*

*Gomes*, 2005 U.S. Dist. LEXIS 6878 at *90.

In this case, although the court acknowledges that defendant Nye's use of the term "love-making" in reference to the alleged assault was indeed an unfortunate and insensitive choice of words that may have caused the plaintiff some measure of discomfort, that insensitivity did not unfairly deprive the plaintiff of a protected interest. Instead, the court concludes that the plaintiff has not established that a constitutionally protected interest was implicated in this case. Again, the plaintiff's further attendance at USM was not at risk such that she was entitled to either due process protection or "fundamental fairness."

Further, the fact that defendant Nye referred to the alleged assailant as "Charlie" rather than "Charles" is unremarkable and does not render the proceedings unfair given that the alleged assailant introduced himself to the Committee at the start of the proceedings as "Charlie." *See* Defs' Reply S.M.F.; *and* Hearing Transcript at 3:21. With regard to plaintiff's requests that defendant Nye be recused due to his allegedly contentious history with plaintiff's father, the Code provision relating to challenges, quoted above, does not accord a complainant the right to challenge a faculty advisor to the Committee. *See* Nelson Aff. Exh. A. Finally, the court notes that even if defendant Nye's conduct during the hearing did, in some way, imply his own bias against the plaintiff, as a faculty advisor defendant Nye was not a voting member of the Committee. *See* Defs' S.M.F. ¶ 11; and Pl's Responsive S.M.F. ¶ 11. Any alleged bias on his part, therefore, would have limited, if any, impact on the ultimate decision of the Committee.

Accordingly, because the plaintiff has failed to demonstrate a genuine issue of material fact regarding her due process claims, she has similarly failed to

demonstrate a genuine issue of material fact regarding her breach of contract claim. The defendants are therefore entitled to summary judgment on Count X.

The court further notes that even if plaintiff had established a genuine issue of material fact regarding a breach of the contract, she has failed to sufficiently allege an injury entitling her to the emotional distress damages she seeks. In Maine, "[a]s a general rule, in order to recover for mental or emotional distress suffered as a result of a breach of contract, the plaintiff must suffer some accompanying physical injury . . .." *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 651 (Me. 1993) *(citing Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 696 (Me. 1986)). In this case, plaintiff asserts that she is entitled to collect emotional distress damages from the alleged breach because she also suffered physical injury from the breach. She does not, however, allege any such physical harm arising from the alleged breach of contract in her Complaint nor does she assert any such harm in her Rule 56(h)(2) statements of material fact. Accordingly, defendants are also entitled to summary judgment on Count X due to plaintiff's failure to demonstrate a genuine issue of material fact regarding damages.

The entry is

Defendants' Motion for Summary Judgment is GRANTED.

Dated at Portland, Maine this _13th_ day of May, 2005.

Robert E. Crowley
Justice, Superior Court